O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 10-5063 ODW (SSx) | Date | July 12, 2010 |
|---|---|---|---|
| Title | *Samson J. Charley d/b/a Verdugo Station v. Chevron USA, et al.* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge | |
|---|---|---|
| Raymond Neal | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):** **ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [3]**

The matter is before the Court on Plaintiff Samson J. Charley ("Plaintiff") d/b/a Verdugo Station's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction, filed concurrently with the Complaint on July 9, 2010. Having considered Plaintiff's papers, the application is **DENIED.**

## I.   FACTUAL BACKGROUND

Plaintiff applies for a temporary restraining order preventing Defendant Chevron ("Chevron") from terminating his dealership at the station located 2817 Honolulu Drive, Verdugo City, CA 91046-1000 (hereinafter, "Verdugo Station"). The ex parte application is made on the grounds that if Chevron is not immediately enjoined from terminating Plaintiff's dealership, he will lose the goodwill and customers he has built through hard work and customer service since 1997. Plaintiff asserts that if he starts losing his customers due to Chevron's faulty termination activities, his business could suffer irreparable damage. Plaintiff has created the purported "emergency" that forms the basis of the instant ex parte application. Accordingly, for the reasons further discussed below, the Court **DENIES** the instant application because it is procedurally improper.

This action stems from a dealership contract entered into by Plaintiff and Chevron. Plaintiff's Verdugo Station became a Chevron branded station in 1997. Plaintiff avers that after thirteen years of "stellar" performance, Chevron sent Plaintiff an improper termination notice on **January 12,**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5063 ODW (SSx) | Date | July 12, 2010 |
|---|---|---|---|
| Title | *Samson J. Charley d/b/a Verdugo Station v. Chevron USA, et al.* | | |

**2010** ("the Notice"). The Notice advised that the agreement between Plaintiff and Chevron, titled *Chevron Retailer Supply Contract* (hereinafter, "Supply Contract"), would be terminated effective April 19, 2010 due to a claim that the Verdugo Station had not implemented a so-called "Image Refresh Program." (Compl., Exh. H.) According to the Complaint, this termination date has been extended to July 23, 2010. (Compl. ¶ 44.) Plaintiff argues that the termination is unwarranted given that he has complied with the image standards delineated in Section 2(c) of the Supply Contract for the past thirteen years. By this ex parte application, Plaintiff asks the Court to prevent Chevron from terminating the Supply Contract. The Plaintiff's ex parte application is devoid of any explanation as to why Plaintiff delayed in seeking injunctive relief.

## II. DISCUSSION

"Ex parte applications have reached epidemic proportions in the Central District," Judge Rymer warned us in 1989 in *In re Intermagnetics Am.*, 101 B.R. 191, 192 (C.D. Cal. 1989). Years later, in the oft-cited case from our district, *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995), lawyers were reminded when the use of ex parte application is justified and when it is not. Given the continued abuse of this mechanism to bypass the regular noticed motion procedure, the Court finds it necessary to highlight a few lessons from *Mission Power*.[1]

The Court explained:

When an ex parte motion is filed, it is hand-delivered immediately from the clerk's office to the judge. The judge drops everything except other urgent matters to study the papers. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials--where a courtroom full of deserving users of the court are waiting--are often interrupted or delayed.

It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption. Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of

---

[1] Nothing in this order is intended to express any opinion of the merits of Plaintiff's motion.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5063 ODW (SSx) | Date | July 12, 2010 |
|---|---|---|---|
| Title | *Samson J. Charley d/b/a Verdugo Station v. Chevron USA, et al.* | | |

standing in a crowded theater and shouting, "Fire!" There had better be a fire.

*Mission Power*, 883 F. Supp. at 491-92.

"What showing is necessary to justify ex parte relief? First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

Here, the Court questions whether a true emergency has been presented to the Court that will justify the use of ex parte procedures. Plaintiff seeks injunctive relief preventing Chevron from terminating the Supply Contract on July 23, 2010. However, the evidence submitted by Plaintiff reveals that Plaintiff is not without fault in creating the crisis that requires ex parte relief. Plaintiff knew since January 12, 2010 or shortly thereafter that termination of the Supply Contract is imminent because the Notice provided a termination date of April 19, 2010. That termination date has been extended twice to July 9, 2010 and July 23, 2010, respectively. However, it was not entirely clear from Plaintiff's briefings the circumstances and conditions surrounding the extensions and when such extensions were granted. Based on Plaintiff's papers, the Court cannot say that Plaintiff is without fault in creating the crisis that requires ex parte relief. Of equal importance, the Court questions whether money damages are insufficient to make Plaintiff whole in light of the fact that this case is essentially a breach of contract case that calls for an award of damages pursuant to California contract law and the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq*.

### III. CONCLUSION

Based on the foregoing, Plaintiff's ex parte application for TRO is DENIED without prejudice to move for a properly noticed preliminary injunction and set the motion for hearing on the Court's regular law and motion calendar.

**IT IS SO ORDERED**.

---- : 00

Initials of Preparer RGN